IRVIN I. SHULL, APPELLEE, V. JOHN GOERL, APPELLANT.

FILED MAY 29, 1912. No. 17,073.

Specific Performance: SALE OF LAND. Plaintiff and defendant entered into a written contract for the sale of 160 acres of land for $15,600. Five hundred dollars was paid in cash, $2,000 was to be paid January 1, 1910, and a mortgage given for the balance. The vendor was to furnish a warranty deed and a good and sufficient abstract of title. Time was an essential element in the contract. A few days before January 1, 1910, the vendor consented to a delay until January 5 on account of inclement weather and bad roads whereby the vendee was prevented from reaching the office of the middleman where they had agreed to meet. On that day, the same conditions prevailing, the vendee was unable to attend the meeting place, though he had paid $1,000 to the agent for the defendant, and the vendor, without having prepared for delivery or having tendered a deed or abstract, declared the contract canceled. On January 11 the vendee was ready to perform, and the vendor was notified that the $2,000 had been paid and the mortgage and note executed, but he refused to execute the contract. *Held*, That the vendor having retained the money paid, having waived strict performance on the day named, and having failed to tender an abstract and deed as specified by con-

tract, the equities of the vendee are superior to his, and that the decree of the district court awarding specific performance is justified by the evidence.

APPEAL from the district court for Merrick county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*Elmer E. Ross* and *Baldrige, De Bord & Fradenburg,* for appellant.

*Martin & Bockes, contra.*

LETTON, J.

This is an action for specific performance of a contract for the sale of real estate. A decree was rendered in favor of the plaintiff, from which the defendant appeals.

On July 31, 1909, the parties entered into an agreement whereby the defendant Goerl agreed to sell to plaintiff 160 acres of land for $15,600, payable as follows: $500 cash, which was evidenced by a note then executed and later paid; $2,000 cash due January 1, 1910; and a mortgage for $13,100 at 5 per cent. to be dated January 1, 1910. Time was made the essence of the contract.

The testimony shows that plaintiff was a tenant of one W. C. Kerr, who was engaged in the real estate business in Central City. Goerl, the vendor, had listed the land with Kerr for sale. Kerr showed the land to plaintiff and negotiated the sale. He drew up the contract of sale in duplicate, and became security for the plaintiff upon a note for $500 to cover the first payment. This note was afterwards paid to Goerl. Upon December 28, 1910, plaintiff delivered to Kerr a check for $1,000 payable to him for the purpose of paying on the contract on January 1, 1910, when the $2,000 came due, and on January 11 he paid Kerr another $1,000 for the same purpose. In the latter part of December, 1909, Kerr went to Goerl's residence; Goerl was not at home, but his son Fritz, who often acted for him, was there. He told Fritz to tell his father that Mr. Shull and wife would be at his office on

January 5 to execute the notes and mortgage, that the money would be ready, and for his father to come in ready to complete the contract. So far there is no dispute in the testimony.

As to what occurred on the 5th day of January at Kerr's office there is a sharp conflict. Kerr testified that Goerl called at his office on that day; that he told Mr. Goerl that he had $1,000 there to pay him, asked him about the deed and abstract, and told him that Mr. Shull wanted an abstract; that Goerl got angry and went out, and that he never received from Goerl or tendered to Shull either an abstract or deed; that at a later date Goerl told him that he had canceled the contract; that at this later conversation he told Goerl he had $2,000 of Shull's money in his hands, and that Shull wanted his papers; that on January 11 he notified Goerl by letter that he had received this $2,000 from Shull for payment on the contract. The witness testified that he still has the $2,000 in question in his possession.

On the other hand, Goerl testifies that he was at Kerr's office on January 5, 1910; asked if the money was there; that Kerr said that the money was not there, that the weather was bad and Shull could not get out his corn; that he (Goerl) said, "That is a poor excuse, he had five months' time to finish that, and I have to keep to the contract, that is all I can do;" that Kerr never mentioned having $1,000 there for him, never said anything about money, and did not offer any mortgage or notes; that he took with him his old abstract, deed, mortgages, patents, etc.; that Kerr did not ask him about an abstract; that he did not show Kerr the papers, and that he never received a letter from Kerr. Goerl's son-in-law, William Sandeman, testified that he went with him to Kerr's office on January 5 and heard all the conversation. He corroborates Mr. Goerl's version, and testified that nothing was said by Kerr about having any money on hand, or with reference to a deed or abstract; that Kerr became angry when Mr. Goerl told him he was going to cancel

the contract, and so they left without further conversation. Fritz Goerl testified that, in August, Shull told him that on account of the way the crops looked he could not take the place, and that he did not want them to hold a sale or sell any of their stock until he knew whether he was going to take the place or not. Mr. Shull testified that Kerr was not his agent in any of these transactions; that he paid him a check of $1,000 for Mr. Goerl on December 28, 1909; that he had plenty of corn and live stock on hand for sale with which to raise the money; that he made arrangements at a bank for the balance if he could not deliver the stock and grain; that he lived 16 miles from Central City, and that on the 5th of January the weather was so bad that his wife and himself could not go there; that Goerl never furnished him an abstract of title and never tendered him a deed; that in August he had endeavored to get his $500 note returned and cancel the contract, but that Goerl refused to give it up, and that he then told Goerl that if he had to lose the $500 he might as well go ahead with the deal; that on January 11, 1910, he went to Central City and left $1,000 more with Kerr, and executed and delivered to Kerr the note and mortgage required by the contract, and that up to that time the payment of $2,000 had never been demanded and he had never received any word from Goerl that he would cancel the contract; that Goerl still retains the $500. Fritz Goerl further testified that he had a talk with Kerr about December 31, 1909, at the home place, and also a telephone conversation about the first Tuesday in January, 1910; that in the first conversation Kerr said that on account of the bad roads and snow Shull was having difficulty in getting his crop to market, and the weather was bad for him to get to town and this was causing Mr. Shull to delay; for them not to come in before Wednesday, and that he telephoned not to come in before Saturday; that the witness told Kerr that would be all right, and he would tell his father as soon as he got home; that when the father got home he told him Kerr had been out

and said not to come in until Wednesday, and then he telephoned on Tuesday that Shull could not come in until Saturday, and the father said it was all right if they would come up to the contract.

It appears that Goerl had an old abstract of title coming down to about 15 years before, but that he never had prepared and tendered to plaintiff for examination an abstract of title to the property or a deed to the same. There is no provision in the contract providing for the forfeiture of the money paid, yet he still retains the $500 paid upon the contract. It appears from the undisputed testimony that Goerl consented to a short delay to allow Shull to dispose of his grain and to come to Central City. Having thus waived a strict compliance with the terms of the contract as to time, when the money was ready for him upon the 11th of January, and when he was actually prepared to perform its conditions on his part, we think it would be highly inequitable to allow him to retain the $500 paid and to insist upon the cancelation of the contract. We think the equities of the case are with the plaintiff.

The judgment of the district court is therefore

AFFIRMED.